Argued and submitted February 5,
reversed November 4, 1980

In the Matter of the Compensation of
Lonnie Frasure, Claimant.

FRASURE,
*Respondent,*
*and*
PERMANEER CORP. et al,
*Respondents/Petitioners,*
*v.*
AGRIPAC, INC., et al,
*Petitioners/Respondents.*

(No. 76-5851, 77-2452, CA 12391, SC 26500)

619 P2d 274

James D. Huegli, Portland, argued the cause for petitioners Permaneer Corp. and Chubb Pacific Indemnity Group. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, and Elizabeth K. Reeve and James M. Finn, Portland.

Gary J. Ebert, Ontario, argued the cause for respondent Lonnie Frasure. With him on the brief was Yturri, Rose & Burnham, Ontario.

Glen McClendon, Portland, argued the cause for petitioners/respondents Agripac, Inc., and Leatherby Insurance Co. With him on the brief were Lindsay, Nahstoll, Hart, Neil & Weigler, and Steven K. Blackhurst, Portland.

Before Denecke, Chief Justice, and Howell, Lent, Linde and Peterson, Justices.

PETERSON, J.

## PETERSON, J.

This case arises under the Workers' Compensation Law. Both the type of accident and the type of injury here being considered are commonplace. However, unusual issues concerning timeliness of claim and the liability of successive employers arose from an unusual flip-flop of medical opinion which occurred at a time far removed from the time of the accident.

### THE FACTS

Claimant received a compensable injury on January 13, 1972, while employed by Permaneer Corporation. His claim was accepted by Permaneer and its compensation carrier, Chubb Pacific Indemnity Group, and was closed on December 4, 1972, with an award of permanent partial disability of 10 percent loss of the right leg and 15 percent of the maximum allowable by statute for unscheduled back disability. Due to an apparent worsening of claimant's condition, the claim was later reopened and surgery was performed. Following a period of recovery, the claim was closed for a second time, on June 5, 1974. Claimant was awarded additional permanent partial disability of 15 percent of the maximum allowable by statute for unscheduled low back disability.

In 1975 claimant was accepted for retraining purposes. He completed a course of study as a machinist on May 9, 1975, and thereafter participated in an on-the-job training program as a machinist. His work performance and progress in his training program were satisfactory even though he continued to have pain in his back. He lost no time from training or work because of his back condition, but was laid off due to economic conditions.

After his lay-off, claimant obtained employment as a laborer at Agripac, Inc. On his first day of work, Saturday, September 13, 1975, he was assigned to shovel corn. The work was fast and repetitive and involved lifting, bending, and stooping. While performing this task, and without any specific traumatic event, claimant's back began to hurt. Claimant told his foreman that his "back was hurting because * * * of the shoveling of the corn." The foreman transferred claimant to a less demanding job

(which also involved shoveling) for the remainder of the workday.

The next day, Sunday, was not a workday and claimant rested all day. On Monday, September 15, 1975, he was assigned to a job sorting beets on a conveyor belt. This job involved prolonged standing. After several hours of work, claimant told his supervisor that his "back was hurting" and that he had to go home. Claimant left work, immediately sought outpatient treatment at the emergency room of a hospital, and never again worked at Agripac.

Claimant consulted several physicians, all of whom concluded that his exertions at Agripac aggravated his original back injury of January 13, 1972. Claimant filed an aggravation claim with the Permaneer compensation carrier, which reopened claimant's file as an aggravation claim and commenced paying time-loss benefits and medical benefits through a second back operation.[1] The claim was closed, for a third time, on July 8, 1976, with an award for time-loss only. Claimant thereafter requested a hearing. ORS 656.283.

In early 1977, prior to the hearing, and nearly one and one-half years after the Agripac incident, claimant's doctors changed their earlier opinions and unanimously concluded that claimant had suffered a new injury at Agripac rather than an aggravation of the old Permaneer injury. Promptly after receiving notice of the new medical opinions, claimant filed a claim for a new injury against Agripac and its compensation carrier, Leatherby Insurance Company. They denied responsibility, contending that the claim was not timely filed[2] and that claimant had sustained an aggravation rather than a new injury.

Claimant also requested a hearing on Agripac's denial of responsibility. The hearings referee concluded that claimant had sustained a new injury while shoveling corn at Agripac and that the claim was not barred by

---

[1] ORS 656.273 provides for the filing of claims, after the last compensation award, for additional compensation, including medical services, for worsened conditions resulting from the original injury.

[2] *Leatherby* relied on ORS 656.265(1), discussed below, which requires notice within "30 days after the accident."

untimely filing of notice because Agripac had actual knowledge of claimant's injury.[3] The referee awarded claimant 75 percent of the maximum allowable by statute for unscheduled permanent partial disability. Agripac appealed to the Workers' Compensation Board.

On *de novo* review, the Board agreed with the findings and conclusions of the referee, but reduced claimant's award from 75 percent to 65 percent of the maximum unscheduled permanent partial disability.

Agripac appealed to the Court of Appeals. On *de novo* review, that court agreed that claimant sustained a new, otherwise compensable injury at Agripac, but that:

"* * * * *.

"2) Neither Agripac nor its carrier, Leatherby Insurance Company, received notice of the new injury within the time fixed by law; both were prejudiced by this delay; said claim is therefore barred as to Agripac and Leatherby.

"* * * * *.

"4) By voluntarily accepting and processing claimant's claim and paying aggravation benefits to claimant for approximately 17 months, Chubb Pacific is estopped to assert the defense of nonliability and must be deemed to have assumed liability for the reasonable consequences of that action which resulted here. * * *.

"By the same token, claimant, having claimed aggravation and accepted benefits therefor from the first employer and its carrier, should likewise be precluded from taking a contrary position. In other words, both claimant and the employer's carrier are bound by the consequences of their respective actions.

"5) It follows that Chubb Pacific must be held liable for the full extent of claimant's permanent partial disability and time loss." 41 Or App at 11-12.

On review in this court, Permaneer and Chubb Pacific assert that the Court of Appeals erred in its estoppel holdings. Claimant asserts that if he is not entitled to compensation from Permaneer, he is entitled to compensation from Agripac on the theory that his failure to give notice to Agripac under ORS 656.265(1) is excused by Agripac's knowledge of his injury, ORS 656.265(4)(a). We will first discuss the estoppel issue.

---

[3] ORS 656.265(4)(a), quoted in full below.

PAYMENT OF COMPENSATION BENEFITS DID NOT ESTOP THE FIRST EMPLOYER FROM SUBSEQUENTLY DENYING THE CLAIM ON THE GROUND THAT IT WAS NOT COMPENSABLE.

The Court of Appeals, in its first opinion, held that Chubb Pacific "is estopped to assert the defense of nonliability and must be deemed to have assumed liability for the reasonable consequences of that action which resulted here. * * *"[4]

Chubb Pacific and Permaneer Corporation sought reconsideration, vigorously asserting that the Court of Appeals had "failed to apply the correct standard for the doctrine of estoppel in this case." In its opinion on reconsideration, the Court of Appeals adhered to its earlier holding:

"* * * We held that the making of the voluntary payments by the employer did not bar the employer from subsequently denying the claim *but only from denying the claim on the ground that it had not been timely filed.* ORS 656.265.

"Contrary to petitioner's arguments, our decision in the case at bar therefore does not change the existing rules allowing employers to commence payments to injured claimants immediately after the accident (within 14 days under ORS 656.262(4)), but subsequently to contest the claim on the merits." (Emphasis added.) 41 Or App at 651.

---

[4] The referee had also considered the estoppel question and held:

"(4) The doctrine of equitable estoppel, or estoppel by conduct, has no application to the facts of this case. Such doctrine requires: (a) a false representation; (b) made with knowledge of the facts; (c) that the party must have been ignorant of the truth; (d) that the false representation was made with the intention that it should be acted upon by the other party; and (e) the party must have been induced to act upon it. *Burnett v. SAIF,* 29 Or App 415, [563 P2d 1234] (1977). Among the first employer, its carrier and claimant, the referee questions whether the employer or its carrier knowingly made a false representation with the intention that claimant act upon it. Apparently, in good faith, but erroneous when using hindsight, the first employer and carrier accepted claimant's aggravation claim and processed the same. Such conduct does not appear to fall within the above doctrine. Among the first employer, its carrier, the second employer and its carrier, it appears all elements required by the doctrine are missing. The first employer or its carrier made no assertions to the second employer and its carrier, and the second employer and its carrier were not induced to act based on such assertions. When the new injury claim was presented to the second employer and its carrier, such claim was promptly denied, and no payment of workers' compensation benefits was made. The parties' request to apply the doctrine of equitable estoppel is denied."

This finding was adopted by the Board.

■■ There is no estoppel in this case. The Court of Appeals erred in holding that Permaneer and Chubb Pacific were estopped to deny the compensability of the claim.

One of the manifest purposes of Oregon's Workers' Compensation law is to achieve prompt payment of claims to injured workers. The responsibility for making such payments is imposed on compensation carriers and direct responsibility employers, and such payments are to be made "promptly and directly to the person entitled thereto upon the employer's receiving notice or knowledge of a claim, except where the right to compensation is denied by the direct responsibility employer or corporation." ORS 656.262(2). The first payment must be paid "no later than the 14th day after the subject employer has notice or knowledge of the claim." ORS 656.262(4). Written notice of acceptance or denial of the claim must be given to the claimant within 60 days "after the employer receives notice or knowledge of the claim." ORS 656.262(5). ORS 656.262(8) provides for a 25 percent penalty for unreasonable delay or refusal to pay compensation or unreasonable delay in acceptance or denial of a claim. The legislature further provided, in the same statute, that acceptance of a claim or payment of compensation did not prevent the employer or carrier from subsequently denying the claimant's right to compensation. ORS 656.262(7) provides:

"(7) Merely paying or providing compensation shall not be considered acceptance of a claim or an admission of liability, nor shall mere acceptance of such compensation be considered a waiver of the right to question the amount thereof."

Chubb Pacific's assertion that the claimant is not entitled to recover from it or Permaneer is not based upon lack of notice, but upon the premise that the claimant sustained a new injury at Agripac. We confess to some difficulty in reconciling the Court of Appeals opinion on reconsideration (that the "decision in the case at bar * * * does not change the existing rules allowing employers to commence payments to injured claimants immediately after the accident * * * but subsequently to contest the claim on the merits") with its original holding that Chubb Pacific, "by voluntarily accepting and processing claimant's claim and paying aggravation benefits to claimant

* * * [is] estopped to assert the defense of nonliability * * *." In our opinion, ORS 656.262(7) clearly applies, thus permitting Chubb Pacific and Permaneer to subsequently assert that they are not liable to the claimant, if the denial is based upon a defense other than lack of notice.[5]

The Court of Appeals relied upon 3 Larson, Workmen's Compensation Law 15-149 and § 78.44 (*sic,* § 78.45), but the cases discussed therein involve attempts by employers and carriers who have paid benefits to avoid liability on the ground of *late notice,* not on the ground that the claim is otherwise not compensable. Chubb Pacific and Permaneer make no such assertion here. Their contention is that the claim is otherwise not compensable. This distinction is made clear in the Oregon State Bar Handbook on Workmen's Compensation, § 12.17 (1975), wherein it is stated:

"Payment of compensation during this period does not prejudice the employer's right to deny the claim, nor does acceptance of the benefits prejudice the worker's right to contest the amount. Payment is not considered an acceptance of the claim or admission of liablity. ORS 656.262(7). Payment of compensation by the employer, however, does preclude the employer from contending that the claim was untimely filed. *Logan v. Boise Cascade Corporation,* 5 Or App 636, 641, 485 P2d 441 (1971)."

We believe that the statutory policy requiring prompt payment of benefits is inconsistent with the holding of the Court of Appeals. As Judge Buttler succinctly stated in *Jacobson v. SAIF,* 36 Or App 789, 793, 585 P2d 1146 (1978):

"* * * It is better to encourage prompt payment than it is to discourage it by holding that the insurer who makes payment of medical expenses under ORS 656.245 is estopped to contest coverage with respect to an aggravation claim under ORS 656.273. We hold that the payment of medical expenses under ORS 656.245 following the filing of a claim for aggravation does not amount to an acceptance of the aggravation claimed by the employer or the insurer, and does not estop the employer or insurer from contesting the causal connection between the previously determined compensable injury and the claimant's present symptoms."

---

[5] ORS 656.265(5) requires the employer to raise "the issue of failure to give notice * * * at the first hearing on a claim for compensation * * *."

Finally, it is appropriate to note that neither Agripac nor Chubb Pacific are "guilty" of making the type of representations normally associated with estoppel. They made (1) no false representations (2) with knowledge of the facts (3) with the intention that the other party rely upon it.[6]

The policy underlying the statutes recognizes that prompt processing of claims by employers and carriers is a goal of the Workers' Compensation Law, to the benefit of injured wage earners. At the same time, the statutes assure employers and carriers that they will not be prejudiced by prompt payment of claims when they receive new information which reveals their nonliability for a claim.

Under the Court of Appeals decision, employers would be compelled to either deny coverage or postpone acceptance as long as possible, thus risking penalties to themselves and denying benefits to the injured worker, often when the worker most needs the financial benefits afforded by the Workers' Compensation Law. We fear that the end result of the Court of Appeals holding would be to frustrate the purpose of the Act — prompt payment to and prompt treatment of the injured worker — with little or no benefit resulting therefrom.

EFFECT OF EMPLOYER'S KNOWLEDGE
OF INJURY — ORS 656.265(4)(a)

ORS 656.265(1) provides:

"(1) Notice of an accident resulting in an injury or death shall be given immediately by the worker or his dependent to the employer, but not later than 30 days after the accident. The employer shall acknowledge forthwith receipt of such notice."

ORS 656.265(4)(a) provides:

"(4) Failure to give notice as required by this section bars a claim under ORS 656.001 to 656.794 unless:

"(a) The contributing employer or direct responsibility employer had knowledge of the injury or death, or the corporation or direct responsibility employer has not been prejudiced by failure to receive the notice; * * *."

---

[6] *Bennett v. City of Salem,* 192 Or 531, 541, 235 P2d 772 (1951), lists the elements of estoppel.

The referee thoroughly considered the facts of this case and concluded:

> "(2) Claimant's new injury claim is not barred by his failure to give timely notice of claim pursuant to ORS 656.265(1). Admittedly, his new injury claim was not timely filed, i. e., he did not file his form 801 until February 9, 1977. Notwithstanding this fact, the bar to claimant's new injury claim is removed under ORS 656.265(4)(a). The referee believes the evidence supports a conclusion that Agripac, Inc. was advised of when and where and how claimant's injury occurred. Claimant's testimony, which is undisputed, establishes that he advised his supervisor that his back hurt him because of the shoveling activities and that his back condition precluded shoveling. His testimony also establishes that he requested a job change because of his back condition, and when he was unable to obtain lighter work, he terminated his job at Agripac. Claimant's testimony, to some degree, is supported by the employee termination record of Agripac, Inc. (Exhibit M). The referee so finds and concludes. It is the opinion of the referee that Agripac, Inc., between September 13, 1975 and September 15, 1975, did have knowledge, imputed to it through the knowledge of its supervisory personnel, of the injury, i. e., information sufficient to put the employer on notice that claimant had possible [sic] suffered a compensable injury. [7] * * *."

The Board, on *de novo* review, agreed.

The Court of Appeals' only finding relative to ORS 656.265 was:

> "2) Neither Agripac nor its carrier, Leatherby Insurance Company, received notice of the new injury within the time fixed by law; both were prejudiced by this delay; said claim is therefore barred as to Agripac and Leatherby." 41 Or App at 11.

It appears to us that the Court of Appeals held (1) that no *notice* was given to Agripac of the "accident resulting in any injury," as required by ORS 656.265(1); (2) that Agripac was prejudiced by this delay, ORS 656.265(4); and

---

[7] *Compare* ORS 656.262(3) which requires the employer to notify its compensation carrier "* * * not later than five days after notice or knowledge of any claims or accidents *which may result in a compensable injury claim* * * *." (Emphasis added.) In a substantial sense, such a duty is virtually the same as the employee's duty to give notice.

(3) therefore, Agripac was not liable for claimant's compensation benefits, even though his "work activities at Agripac * * * were a material contributing factor to claimant's need for further back surgery; [and] the claimant in fact sustained a new injury for the purpose of this case." 41 Or App at 11.

■　Oregon's Workers' Compensation scheme requires that the claimant give "notice of an accident resulting in an injury * * * not later than 30 days after the accident." ORS 656.265(1). But the notice requirement is excused if (a) the employer "had knowledge of the injury" or (b) if the carrier or employer "has not been prejudiced by failure to receive the notice." ORS 656.265(4)(a). Here, the Court of Appeals held that Agripac and its carrier were prejudiced. We are bound by that holding, *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 491 P2d 997 (1971), for this court does not review Workers' Compensation cases *de novo.* But from reading the opinion we are unsure whether the Court of Appeals found that the claimant was barred because of his failure to give "notice of an accident" as required by ORS 656.265(1), or because the employer had no "knowledge of the injury" under ORS 656.265(4)(a). A comparison of ORS 656.265(1) and ORS 656.265(4) will explain our uncertainty.

ORS 656.265(1), reduced to its bare bones, says that notice of an accident resulting in injury shall be given "not later than 30 days after the accident." The language is straightforward enough, but the statute is, in fact, ambiguous. Ambiguity arises from the word "accident," which is not defined in the statute. An accident may, and usually is, associated with a violent event from which injuries result, as a collision between cars or a fall on a slippery floor. But our statutes also permit recovery of compensation benefits even where there is no such "accident." For example, when a worker is performing a normal work activity and suffers injury because of some physiological weakness, the worker may be entitled to compensation even though the injury had no violent, external, or accidental cause.[8]

---

[8] In *Demagalski v. State Ind. Acc. Comm.,* 151 Or 251, 47 P2d 947 (1935), the court denied recovery where normal stooping and lifting involved in decedent's job caused cerebral hemorrhage.

The statute is ambiguous, at least to the extent that a compensable injury may occur which does not result from an "accident," as that term is used above. Thus, the calculation of time for giving notice could run from the time of an event which never occurred.[9] The legislature has

"* * * [T]his court is committed to the line of cases which hold that where an unusual or unexpected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means; *that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected or unforeseen * * *.*" 151 Or at 254. (Emphasis added.)

The court concluded:
"In the case at bar there. is an entire absence of any evidence of an accidental cause of decedent's death. He was engaged in catching and crating pheasants. That is what he intended to do and that is what he did. There is no evidence that anything fell upon or against decedent or that anything in use by him failed to function in its normal and customary manner." 151 Or at 255.

In 1957, the legislature amended the Workers' Compensation Law to make compensable any "accidental injury arising out of and in the course of [the worker's] employment." The legislation further provided by definition: "*An injury is accidental if the result is an accident, whether or not due to accidental means.*" (Emphasis added.) See ORS 656.005(8)(a), footnote 9 below.

In a case of first impression under the 1957 amendments, the court stated in *Olson v. State Ind. Acc. Com.,* 222 Or 407, 409, 352 P2d 1096, 1098 (1960):
"It is quite clear that the language used in amending [the Workers' Compensation Law] was intended to enlarge the operation of the statute. The removal of the words 'caused by violent or external means' undoubtedly had as its purpose the bringing within the coverage of the act those workmen who, though doing an intentional act required by their employment, suffered an unintended injury because of some physiological weakness, but were excluded from the coverage of the act because the injury suffered was not caused by an external force. * * *."

The court concluded:
"Under the interpretation we place upon the present statute, we believe there can be little question but that the accidental element in the present statute was satisfied. Bennie C. Olson did not intend his sudden death, it was not expected nor designed, but was an unlooked for and unexpected event. There is no evidence the deceased had any prior knowledge that he was suffering from a heart condition which would cause him to suffer death from the slightest labor performed." *Id.* at 414, 352 P2d 1099.

[9] See the definition of "compensable injury" of ORS 656.005(8)(a):
"A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; *an injury is accidental if the result is an accident, whether or not due to accidental means.*" (Emphasis added.)

A compensable injury is an accidental injury whether or not due to an accident.

not defined "accident" in the compensation law, leaving to courts the task of defining its meaning on a case-by-case basis.

ORS 656.265(4) provides that failure to give notice bars a claim "unless the * * * employer *had knowledge of the injury.*" (Emphasis added.) There may be a difference between "notice of an accident" under ORS 656.265(1) and "knowledge of the injury" under ORS 656.265(4)(a), particularly where (as here) there is no accident caused by violent or external means.

The legislature appears to have carefully distinguished between "notice" and "knowledge" in other sections of the Workers' Compensation Law, as well. For example, the time for making payments is calculated from the time of "the employer's receiving notice or knowledge of a claim," ORS 656.262(2); employers are required to notify their compensation carrier "not later than five days after notice or knowledge of any claims," ORS 656.262(3); and the time for furnishing an acceptance or denial is calculated from the time the employer received "notice or knowledge of the claim," ORS 656.262(5).

■ The Court of Appeals found that neither Agripac nor Leatherby "received notice of the new injury within the time fixed by law." As stated above, we cannot tell whether the Court of Appeals found that claimant is barred because he failed to give "notice of an accident" under ORS 656.265(1) or because Agripac had no "knowledge of the injury" under ORS 656.265(4)(a).

We therefore:

1. Reverse the Court of Appeals in its holding that Chubb Pacific or Permaneer Corporation is liable to the claimant.

2. Remand to the Court of Appeals for a determination whether Agripac "had knowledge of the [claimant's] injury," ORS 656.265(4)(a). Should the Court of Appeals find that Agripac had knowledge of the injury under ORS 656.265(4)(a), for entry of an award in claimant's favor consistent with the disability award of the Board, and

for entry of an award in favor of Chubb Pacific against Leatherby Insurance Company for appropriate reimbursement for compensation payments it made, consistent with the Board order.

Reversed and remanded to the Court of Appeals.