Argued and submitted February 18, reversed and remanded with instructions
March 23, reconsideration denied May 27, petition for review allowed
June 21, 1983 (295 Or 259)
See 295 Or 788, 670 P2d 1027 (1983)

In the Matter of the Compensation of
Steven Bauman, Claimant.

BAUMAN,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(80-04870; CA A24941)

661 P2d 105

Gerald C. Doblie, Portland, argued the cause for petitioner. With him on the brief was Doblie Francesconi & Welch, PC, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Claimant appeals from an order of the Workers' Compensation Board. The principal issue is whether the Board was correct in concluding that it was permissible for SAIF, the insurer for claimant's former employer, to reconsider and deny his previously accepted claim for a non-disabling occupational disease.[1] We reverse.

In 1977, claimant was employed as a tool and die maker for Omark Industries. His job required some heavy lifting and regular overhead work with his arms. He experienced increasingly disturbing pain in his right shoulder and, in October, 1977, he filed a claim for a bursitis-type condition. SAIF accepted the claim the following month and paid for claimant's medical treatment from that time to 1980. Claimant's symptoms worsened. In February, 1980, his physician notified SAIF that claimant was "in need of further treatment" and requested that the claim be reopened. SAIF's initial response was that, "unless there is time loss and/or impairment involved, it is not necessary that we reopen the claim to pay for the necessary treatment." In April, 1980, claimant underwent surgery to repair a tear in the right rotator cuff. Claimant asserts and SAIF denies that the surgery was authorized by SAIF.[2] In May, SAIF notified claimant that it had denied reopening of his claim "because there is insufficient medical evidence to relate [the] current treatment as arising out of and/or significantly caused by the medical problems for which the October 1977 claim was filed." On November 26, 1980, after reviewing the claim and receiving reports from physicians, SAIF notified claimant:

"* * * State Accident Insurance Fund is now of the opinion that you never sustained either compensable injury by accident or compensable occupational disease in your right shoulder arising out of and in the course of your employment at Omark Industries, Inc. and your claim to have done so is therefore denied, as is your request to have the claim reopened for further medical care and treatment,

---

[1] Claimant quit his job approximately one year after the claim was accepted, for reasons not directly related to the condition giving rise to the claim.

[2] The parties dispute whether SAIF's letter and other communications from SAIF to the physician constituted an authorization for the surgery. In light of our disposition, we do not reach that issue.

the payment of medical and hospital bills, temporary and/or permanent disability attributable to your shoulder condition by whatever name it shall be given.

"The reason for the denial, is among other things SAIF's, and your employer's opinion, that on October 10, 1977 and thereafter while working at Omark Industries, Inc. you incurred no more than a symptom of a pre-existing and personal degenerative disease condition in your shoulder and that your work at Omark Industries, Inc. neither caused nor materially contributed to the normal progression of the disease process and/or your need for medical care and treatment on and following October 10, 1977."

The Board relied on *Frasure v. Agripac*, 290 Or 99, 619 P2d 274 (1980), and *Saxton v. Lamb-Weston*, 49 Or App 887, 621 P2d 619 (1980), and concluded that SAIF had authority to deny the previously accepted claim. It is correct that those cases hold, under their facts, that an insurer's or employer's acceptance of a claim is not always inconsistent with its subsequent denial of compensability or responsibility for the claim. However, in our view, the holdings in those cases do not extend to these facts.

In *Frasure*, the claimant sustained a compensable back injury in 1972, which resulted in an award of permanent partial disability. In 1975, while working for a different employer, he suffered further symptoms. The first employer and its insurer accepted the claimant's aggravation claim but awarded time loss only. Claimant requested a hearing. Between the time of the award and the hearing there was a sharp change in the opinion of claimant's doctors as to whether his symptoms were due to an aggravation or a new injury. The Supreme Court reversed this court's holding that the first employer and insurer were estopped by their earlier acceptance of the claim from denying responsibility at the hearing initiated by the claimant. *See* 41 Or App 7, 596 P2d 1015, *adhered to* 41 Or App 649, 598 P2d 1248 (1979). The Supreme Court reasoned:

"One of the manifest purposes of Oregon's Workers' Compensation law is to achieve prompt payment of claims to injured workers. * * * ORS 656.262(7) [now ORS 656.262(8)] provides:

" '[8] Merely paying or providing compensation shall not be considered acceptance of a claim or an admission of liability, nor shall mere acceptance of such compensation be considered a waiver of the right to question the amount thereof.'[3]

"'* * * * *

"We believe that the statutory policy requiring prompt payment of benefits is inconsistent with the holding of the Court of Appeals. As Judge Buttler succinctly stated in *Jacobson v. SAIF*, 36 Or App 789, 793, 585 P2d 1146 (1978):

" '* * * It is better to encourage prompt payment than it is to discourage it by holding that the insurer who makes payment of medical expenses under ORS 656.245 is estopped to contest coverage with respect to an aggravation claim under ORS 656.273. We hold that the payment of medical expenses under ORS 656.245 following the filing of a claim for aggravation does not amount to an acceptance of the aggravation claimed by the employer or the insurer, and does not estop the employer or insurer from contesting the causal connection between the previously determined compensable injury and the claimant's present symptoms.'

"'* * * * *

"The policy underlying the statutes recognizes that prompt processing of claims by employers and carriers is a goal of the Workers' Compensation Law, to the benefit of injured wage earners. At the same time, the statutes assure employers and carriers that they will not be prejudiced by prompt payment of claims when they receive new information which reveals their nonliability for a claim." 290 Or at 105-07.

In *Saxton v. Lamb-Weston, supra,* we affirmed the Board's ruling that the claimant's condition was medically stationary and that it was noncompensable because it was not occupationally caused. We followed *Frasure* and rejected the claimant's argument that her employer's acceptance of the claim and payment of temporary benefits estopped the employer from denying compensability at the hearing. In *Jacobson v. SAIF*, 36 Or App 789, 585 P2d 1146,

---

[3] The court's characterization of the statute as providing that *acceptance* of a claim does not prevent subsequent *denial* of the right to compensation is an extrapolation from the statutory language that *paying compensation* is not to be considered an *acceptance* or admission.

*rev den* 284 Or 521 (1978), which the Supreme Court quoted with approval in *Frasure,* we held that the insurer's payment of medical expenses pursuant to ORS 656.245 did not estop the insurer from contesting coverage of an aggravation claim, because the payment of expenses "following the filing of a claim for aggravation does not amount to an acceptance of the [claim]." 36 Or App at 793.

■     The major difference between this case, on the one hand, and *Frasure, Saxton* and *Jacobson,* on the other, is that the claim here resulted in an arrangement of compensation which was not challenged by a request for hearing or otherwise. Accordingly, before SAIF purported to deny the claim, responsibility for claimant's condition was as conclusively established as it would have been if the insurer had initially denied the claim and claimant had ultimately prevailed before the Supreme Court. Conversely, in *Saxton,* the claimant was receiving temporary benefits, and closure was the principal issue in the review process where compensability was contested; in *Jacobson,* the aggravation claim was never accepted; and in *Frasure,* the claimant's request for hearing after the insurer's award left his aggravation claim in an unresolved posture at the time the insurer changed its position on the issue of responsibility.

We did not hold in *Saxton* or *Jacobson,* and we do not understand the Supreme Court to have held in *Frasure,* that there can *never* be finality to an employer's or insurer's acceptance of a claim. The principle of those cases is that an employer's or insurer's initial acceptance of a claim does not automatically foreclose it from contesting coverage before there is an award or arrangement of compensation or while agency or judicial review of the award or arrangement remains available or is taking place.

Beyond that point, the policy reasons expressed in *Frasure* have no logical application. The goal of prompt processing and payment of claims needs no further encouragement after a claim *has* been processed and an arrangement of compensation has been made. Similarly, beyond that point, there is no further need to protect the right of employers and insurers to comply with the statutory time requirements for payment and processing and, at the same time, preserve their ability to deny claims after making

further inquiry; they are simply not entitled to a third bite at the apple. Equally fundamentally, to read *Frasure* and our decisions as permitting SAIF's denial of this claim at this stage would introduce an element of tentativeness into the process that the relevant statutes do not seem to contemplate and which is alien to virtually all administrative and adjudicative processes.[4]

For the foregoing reasons, we agree with claimant that it was not permissible for SAIF to reconsider and deny the previously accepted claim and that the Board's contrary ruling was error.

■      Claimant's remaining arguments require brief discussion. He contends that the Board erred by affirming the referee's finding that claimant failed to establish the compensability of his 1977 claim at the hearing following the November, 1980, denial of the claim. Because SAIF had no authority to deny the claim at that time, the Board erred by reaching the question of whether compensability was proved.

■      Claimant next argues that the Board erred in affirming the referee's conclusion that the 1980 symptoms were not compensable as an agravation of the 1977 condition. The basis for the referee's and Board's conclusion was that the aggravation issue was moot, because SAIF was not responsible for the *original* claim. Because we hold that SAIF is responsible for the 1977 claim, we remand the aggravation issue to the Board for reconsideration.

■      Claimant's remaining arguments relate to the Board's rulings regarding compensation and penalties for the 1980 treatment and condition. As earlier noted, *see* n 2, *supra,* claimant contends that SAIF communicated to his physician that the April, 1980, surgery was authorized. The Board concluded that SAIF was responsible for paying claimant's medical expenses incurred before the May, 1980, denial of reopening. The Board explained:

---

[4] It is noteworthy, in this connection, that the Workers' Compensation Law does contain certain express provisions relating to modification or reexamination of awards: *e.g.,* ORS 656.278 and ORS 656.325; *see Bentley v. SAIF,* 38 Or App 473, 590 P2d 746 (1979). However, nothing in the statutes authorizes ongoing *unilateral* adjustments to compensation or reconsideration of liability on the employer's or insurer's own motion.

"* * * Under these (unique, we hope) circumstances in which medical services were rendered in reasonable reliance on apparent authorization from SAIF while the underlying claim was in accepted status, we think it only equitable that SAIF pay for those medical services."

However, the Board reversed the referee's award of a penalty pursuant to ORS 656.262(9).

Claimant argues that the penalty should have been assessed and that SAIF's

"* * * authorization to perform surgery constituted a voluntary acceptance and reopening of the claim requiring [SAIF] to accept the natural consequences of the surgery including medical expenses, temporary total disability benefits and permanent partial disability benefits."

Those arguments seem to us to turn at least in part on whether the 1980 condition is compensable as an aggravation. Consequently, those arguments should also be considered by the Board on remand.

Reversed and remanded with instructions to reinstate acceptance of October, 1977, claim and for further proceedings consistent with this opinion on issues of aggravation, compensation for 1980 condition and treatment and penalties.