Argued and submitted April 29, reversed and remanded October 5, 1983, petitioner Wilkins' reconsideration denied, respondent SAIF's reconsideration allowed, former opinion withdrawn, affirmed January 11, 1984 (66 Or App 420, 674 P2d 78); petitioner Wilkins' reconsideration on second opinion denied February 24, both Wilkins' petitions for review denied March 27, 1984 (296 Or 712)

In the Matter of the Compensation
of George N. Wilkins, Claimant.

WILKINS,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 79-02117; CA A25408)

669 P2d 1154

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Brian L. Pocock, Eugene, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Claimant appeals an order of the Workers' Compensation Board that affirmed the referee and upheld a denial issued more than five years after the alleged accident had occurred. We reverse.

On November 13, 1975, claimant allegedly fell to the ground from the top of a loaded veneer truck and sustained injuries to his hips. The claim was accepted by SAIF, and compensation was paid for time loss and medical benefits for total hip replacement surgery on both the left and right hips and a third surgery to remove trochanteric wires in the right hip. The claim was closed by a determination order on February 23, 1979, with an award of 80 percent permanent partial disability. Both parties requested a hearing on the extent of disability. At the time of the first hearing in August, 1979, employer's attorney stated: "The sole issue involved is extent of disability." That remained the sole issue through four continuances of hearing until the denial was issued on May 6, 1981,[1] over five years after the alleged accident, over two years after the determination order and only two days before the fifth scheduled hearing on the determination order.

Kevin Murphy, the general manager of Murphy Company, testified that he had made the decision to deny the claim. He said that the denial was not issued earlier because the company did not have sufficient proof that an incident had not occurred and that the employer did not have a "legal vehicle" to deny it. When he was asked what the evidence was of which he had no knowledge before January 1, 1981, that influenced his decision to deny the claim in May, 1981, he initially stated that he could not identify any evidence that had so influenced his decision. Later, he stated that his decision to deny the claim was based on 1971-73 hospital reports from Sacred Heart, Dr. Ulman's reports and testimony he had heard in previous hearings. He testified that he knew claimant had been treated at Sacred Heart Hospital in 1971-1973 and that he

---

[1] Three of the continuances were the result of inadequate time being alloted for the testimony. The fourth, on September 2, 1980, was the result of SAIF's attorney having left SAIF and joined a law firm. Thereafter, a partner of that firm left and joined the firm that represented claimant. The parties determined that action created a conflict, and claimant's attorney was removed from the case. The next hearing was not held until May 6, 1981, two days after the denial was issued.

knew that Dr. Ulman had been treating claimant and issuing reports since 1975. It is evident that, with reasonable diligence, those reports could have been obtained by the employer at any time during its investigation of the claim. We therefore construe the issue in this case to be whether an employer has an absolute right to issue a denial at any time before final determination of a claim, without regard to when the evidence on which the denial is based was known or discoverable.

Only two Oregon cases have any direct relevance to this issue. In *Frasure v. Agripac,* 290 Or 99, 619 P2d 274 (1980), the claimant had sustained an initial injury at Permaneer and had had surgery, and the claim was closed. The claimant worked for two days at a second company, Agripac, and again became disabled. All the physicians stated at that point that the work at Agripac had only aggravated the earlier back injury. The claim against Permaneer was closed with an award for time loss only, and the claimant requested a hearing. Before the hearing, the claimant's doctors changed their opinion and unanimously said that a new injury had occurred at Agripac. The claimant filed a claim for new injury against Agripac, which was denied as not having been timely filed. Permaneer issued a denial. The claimant requested a hearing, and the referee concluded that a new injury had occurred and that a claim for the new injury was not barred because Agripac had actual knowledge. The Board affirmed. We reversed, holding that Agripac had not received notice, so the new injury claim was barred but that Permaneer was estopped from denying the aggravation claim. The Supreme Court reversed our decision and held that Permaneer was not estopped to deny the aggravation claim. It held that an employer is not required to deny a claim within 60 days or be barred from a subsequent denial. The court noted:

> "* * * [T]he statutes assure employers and carriers that they will not be prejudiced by prompt payments of claims when they receive new information which reveals their nonliability for a claim." 290 Or at 107.

In *Bauman v. SAIF,* 62 Or App 323, 661 P2d 105, *rev allowed* 295 Or 259 (1983), the claimant submitted a claim for injury in October, 1977. SAIF accepted the claim and paid benefits through 1980. In February, 1980, after the claim had been closed, the doctor notified SAIF that the claimant was in need of further treatment and requested that the claim be reopened.

In April, 1980, surgery was performed and in May, 1980, SAIF denied the aggravation claim stating that there was insufficient evidence that it was related. On November 26, 1980, SAIF denied the original claim, stating that it now believed that no compensable accident had ever occurred. The Court of Appeals held that the denial of the original accident was invalid, because it was issued after a final determination of compensation.

The facts of the present case fall into the grey area between *Frasure* and *Bauman:* a denial issued a substantial time after the accident but before final determination in the case. SAIF argues that, under *Frasure,* there are no limitations on the employer's ability to deny at any time before the final determination of a claim. That would establish a very broad rule that would lead to unconscionable results in some cases. Because of the medical instability of some claimants, a claim can remain open for substantial periods of time and still not be ripe for a final determination. An example is the recent case of *Kociemba v. SAIF,* 63 Or App 557, 665 P2d 375 (1983), which involved an accident that occurred in 1965. In that opinion, we referred the case back to the Board for further processing, holding that after 18 years the claimant was still not medically stationary and that no determination could be made on the extent of his disability. Under SAIF's theory of this case, Kociemba's claim could be denied after 18 years and a contention be made that the accident never occurred. There is no reason in law or justice why a claimant should remain vulnerable to a denial of the entire claim for such an extended period of time merely because procedural complications of the workers' compensation law or the nature of the injury prevent a more prompt final arrangement of compensation. The justification for such a rule cannot be found in the cases relied on by SAIF.

In *Frasure,* the Supreme Court upheld the late denial because it was based on new facts, *i.e.,* consistent medical reports by all doctors that were different from the consistent medical reports issued at the time the claim was accepted. In *Bauman,* we stated that *Frasure* merely holds

"* * * that an employer's or insurer's initial acceptance of a claim does not *automatically* foreclose it from contesting coverage before there is an award or arrangement of compensation or while agency or judicial review of the award or arrangement

remains available or is taking place." 62 Or App at 328. (Emphasis supplied.)

A holding that an employer is not automatically foreclosed cannot be construed to be a holding that an employer can never be foreclosed before a final determination under any factual situation. The factual situations under which late denials may be issued are myriad and cannot possibly be covered by any fixed rule establishing when a denial could or could not be issued before final determination of the claim. We hold, rather, that the decision must be made on a case-by-case basis, evaluating the reasonableness of the employer's late denial. In making that determination, the trier of fact must take into consideration many factors, some of which are the length of time between the alleged accident and the denial of the claim, the complexity of the causation issue and the difficulty of obtaining evidence as to whether causation exists, new evidence available at the time of the denial which was not reasonably available to the employer at an earlier date, the reason for the delay in the claim reaching finality and prejudice to the claimant by the delay.[2]

These facts are relevant in this case:

(1) The causation issue was a relatively simple one, based solely on the employer's contention that the accident never occurred. All evidence relevant to this issue could have been ascertained by the employer within a relatively short time after the accident.

(2) The determination order was issued over two years before the denial. The only reason the claim was still open at the time of the denial was that the hearing had been continued four times from August 29, 1979, until June 11, 1981, when the final hearing was held.

(3) The period of time from the initial accident to the date of the denial was five and one-half years.

(4) The denial was not based on any evidence that could not have been obtained by the employer a significant period of time before the denial.

---

[2] Prejudice may be inferred from the mere passage of time in some cases. *Vandre v. Weyerhaeuser Co.*, 42 Or App 705, 709, 601 P2d 1265 (1979).

Employer's basis for the denial is that the accident never occurred. That was supported by evidence of witnesses who saw nothing and by employer's argument that claimant's description of the accident was inherently incredible. Employer had the ability immediately after the accident to interview potential witnesses and to inform claimant that it did not believe his description of the accident. After five years, claimant's memory and that of any witnesses was undoubtedly dimmed. Claimant's ability to describe the accident in a consistent, believable manner is lessened, and his ability to locate potential witnesses is diminished. He was therefore prejudiced by the late denial.

We hold that employer acted unreasonably in delaying five years before issuing a denial. Employer was barred from denying the claim on that date.

■ Claimant also assigns as error the referee's failure to make findings concerning SAIF"s failure to process claimant's aggravation claim. A July 20, 1979, report of Dr. Bert established that claimant had slipped at work and was now totally disabled. Under ORS 656.273(3), that report could be an aggravation claim. As in *Vandehey v. Pumilite Glass & Building Co.*, 35 Or App 187, 580 P2d 1068 (1978), the question is whether the letter was a claim. We hold that it was not. The extent of plaintiff's disability was still unresolved, and a hearing on that issue had been requested. The letter was relevant evidence in a pending claim; it was not a new claim. Claimant is not entitled to penalties and attorney fees for unreasonable delay in processing a claim. ORS 656.382; ORS 656.262(9); *Vandehey v. Pumilite Glass & Building Co., supra.*

Finally, claimant requests that this court find him to be permanently and totally disabled. Although evidence was fully presented to the referee on the extent of disability, his affirmance of the denial prevented him from reaching the issue of extent. We therefore remand to the Board for determination on this record of the extent of disability.

Reversed and remanded for a determination of the extent of disability.