Argued and submitted July 8, affirmed October 27, 1982

In the Matter of the Compensation of
William Townsend, Claimant.

TOWNSEND,
*Petitioner - Cross-Respondent,*

*v.*

ARGONAUT INSURANCE COMPANY et al,
*Respondents - Cross-Petitioners.*

(No. 79-00826, CA A23849)

652 P2d 828

Michael Wasserman, Salem, argued the cause for petitioner - cross-respondent. With him on the briefs were Rolf Olson, and Olson, Hittle & Gardner, Salem.

Katherine H. O'Neil, Portland, argued the cause for respondents - Cross-petitioners. With her on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Claimant appeals an order of the Workers' Compensation Board approving denial of responsibility for claimant's ankylosing spondylitis. Employer and its compensation carrier, Argonaut Insurance Company (Argonaut), cross-appeal, seeking reversal of an increase in the award by determination order for unscheduled permanent partial disability resulting from a 1972 compensable back injury. We affirm.

Claimant sustained a compensable injury to his back in March, 1972, when he was struck on his lower back by a pole. He was diagnosed as suffering a contusion of the sacrum and lumbar area, chronic lumbosacral strain and a compression fracture of a vertebra. He had had no problems with his back before the injury. In July, 1977, after his claim was reopened, he was examined by Dr. Edward Rosenbaum, a rheumatologist, who diagnosed ankylosing spondylitis, a form of rheumatoid arthritis of the spine. The relation of the spondylitis to the 1972 injury is at issue in this case.

Citing Dr. Rosenbaum's diagnosis, Argonaut denied responsibility for "further medical or compensation benefits * * * in connection with this claim." The denial was interpreted as a total denial and held unreasonable by a referee in December, 1977. The issue of the relationship between claimant's original injury and the ankylosing spondylitis was explicitly held open.

In September, 1977, claimant was hospitalized for severe back pain. A few weeks after the hospitalization, another rheumatologist, Dr. Moore reported to claimant's attorney:

"* * * I would have to favor trauma occurring during that accident as the major cause of the patient's back pain. I am sure that the ankylosing spondylitis has been a contributing factor and I am sure it accounts for some of the patient's stiffness and for some of the chronicity of his pain syndrome. On the other hand, I suspect strongly that the patient would never have had incapacitating back pain had he not had the trauma in 1972. * * *"

He also noted that it is not uncommon for ankylosing spondylitis to be asymptomatic before a back trauma. The following month he wrote a "clarification," stating that claimant's ankylosing spondylitis "flared as a direct result of the trauma he incurred in 1972" and that he "would therefore attribute whatever pain he has at the present time resulting from the spondylitis to be a consequence of that trauma."

By stipulation and order dated September 18, 1978, claimant's claim was reopened as of September, 1977. In December, 1979, the parties entered into a stipulation that ordered Argonaut to comply with the previous stipulation and "continue to pay compensation until closure is authorized," as well as medical expenses.

In July, 1979, claimant was examined by Orthopaedic Consultants, who diagnosed ankylosing spondylitis and chronic low back strain and indicated that the spondylitis was unrelated to the 1972 injury. In July, 1980, Argonaut requested another opinion from Dr. Rosenbaum. On the basis of his July, 1977, examination and a review of subsequent medical reports, Dr. Rosenbaum said that claimant was suffering from ankylosing spondylitis that was unrelated to his injury. Argonaut issued a partial denial with respect to benefits for disability resulting from the spondylitis. A hearing was held, after which the referee approved the partial denial and made a permanent partial disability award of 75% unscheduled low back disability. The Board affirmed and adopted the referee's opinion and order. Claimant appeals the partial denial, and Argonaut cross-appeals with respect to the extent of disability.

■ Claimant contests Argonaut's right to issue a denial, as well as the denial's merits. Claimant argues that Argonaut waived its right to deny the compensability of his ankylosing spondylitis by failing to issue a denial within the statutory time period specified in ORS 656.262(6). That section provides:

"Written notice of acceptance or denial of the claim shall be furnished to the claimant by the insurer * * * within 60 days after the employer has notice or knowledge of the claim. * * *"

However, the penalty for a late denial is not a waiver of the right to deny; the penalty is specified in ORS 656.262(9).[1] The Oregon Supreme Court, in *Norton v. Compensation Department*, 252 Or 75, 79, 448 P2d 382 (1968), stated:

> "* * * [I]n the absence of express legislative direction to ignore notice of denial made more than 60 days, we would not apply that sanction * * *."

■ Claimant also maintains that Argonaut has waived its right to deny compensability of his ankylosing spondylitis by paying benefits after the disease was diagnosed. The Oregon Supreme Court has recently stated that, under what is currently ORS 656.262(8),[2] an employer is not estopped to deny liability after paying compensation if the denial is based on a defense other than lack of notice. *Frasure v. Agripac,* 290 Or 99, 619 P2d 274 (1980). Claimant urges us to distinguish *Frasure* on the ground that the denial in that case was the result of a complete change in medical opinion as to whether the injury was new or an aggravation of an old one. However, we have applied *Frasure* without interpreting its holding to be so limited. *Saxton v. Lamb-Weston,* 49 Or App 887, 621 P2d 619 (1980), *rev den* 290 Or 727 (1981); *Babb v. SAIF,* 49 Or App 707, 619 P2d 1362 (1980). It does not make a difference whether we consider this case in terms of waiver or estoppel; the effect of applying either doctrine would be to subvert the purpose of the workers' compensation system by encouraging the withholding of benefits.

■ Relying on *Clinkenbeard v. SAIF,* 44 Or App 583, 605 P2d 1390 (1980), claimant also contends that Argonaut is foreclosed from denying the compensability of his ankylosing spondylitis because of the stipulations entered into in 1978 and 1979 after Argonaut knew the disease had

---

[1] ORS 656.262(9) provides:

"If the insurer * * * unreasonably delays acceptance or denial of a claim, the insurer * * * shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."

[2] ORS 656.262(8) provides:

"Merely paying or providing compensation shall not be considered acceptance of a claim or an admission of liability, nor shall mere acceptance of such compensation be considered a waiver of the right to question the amount thereof."

been diagnosed. However, unlike the stipulations in this case, the stipulation at issue in *Clinkenbeard* explicitly mentioned compensation for specific subsequently diagnosed diseases. Neither of the stipulations here specifically refers to the condition of ankylosing spondylitis, but each refers only to payment of all compensation due until closure is authorized. We will not interpret the stipulations as admitting what they do not clearly state.

■ ■ We turn to the issue of the compensability of claimant's ankylosing spondylitis. Claimant's disease was not *caused* by his injury. In order to establish its compensability, the burden is on claimant to prove by a preponderance of the evidence that: "(1) his work activity and conditions (2) caused a worsening of his underlying disease (3) resulting in an increase in his pain (4) to the extent that it produces disability or requires medical services." *Weller v. Union Carbide,* 288 Or 27, 35, 602 P2d 259 (1979). Claimant has not met his burden as to the second element of the *Weller* test, *i.e.,* that his 1972 back injury caused a worsening of his ankylosing spondylitis.

The primary support for claimant's position is in the reports and testimony of Dr. Moore, the rheumatologist to whom claimant was referred shortly after the initial diagnosis of ankylosing spondylitis. He treated claimant from September, 1977, until mid-1978. He saw claimant again in September, 1980. Dr. Moore testified:

> "* * * I don't believe he would be in the situation he is now had that accident not occurred. * * * [A]s I look back over the course of this illness, it is the major incident that I see that has caused him to have an ongoing disease activity at a much higher level than what he had before."

The record does not demonstrate an adequate basis for the doctor's conclusion. Examination of his reports and testimony reveals it to be based essentially on the following: (1) that claimant was asymptomatic before the injury and symptoms consistent with ankylosing spondylitis followed the injury; and (2) inflammatory arthritis as a general rule tends to "flare in the face of trauma." Neither basis is sufficient to persuade us that his conclusion is more likely correct than not.

Dr. Moore testified that, in his opinion, the trauma had aggravated the inflamation from ankylosing spondylitis, "producing the symptoms that have carried through to the present time." Indications of the ankylosing spondylitis were apparent in an x-ray report of August, 1973, in which "sclerosis of the iliac aspect of the left sacroiliac joint" was noted. A 1975 x-ray report noted progression since the 1973 x-ray, indicating the possibility of ankylosing spondylitis. However, Dr. Moore testified that sclerosis suggests that ankylosing spondylitis would have been present for a year or more but "whether it had been for three, four years, whether it had been for a year is unclear." He provided no specific explanation other than temporal coincidence why inflammation due to ankylosing spondylitis was aggravated by the 1972 injury. Although he stressed the continuity of symptoms since the injury as a factor in his conclusion, he also stated:

> "* * * I would not be willing to make some kind of statement as to what extent he had ankylosing spondylitis to account for his symptoms and to what extent he had something else. * * *"

Dr. Moore was the only physician who concluded that claimant's 1972 injury had aggravated his disease. Other physicians who examined him, including Dr. Rosenbaum, who first diagnosed ankylosing spondylitis, and Dr. Poulson, who treated claimant from July, 1975, until sometime in the fall of 1977, were unable to make such a connection. Claimant has failed to meet his burden under *Weller* to establish a causal connection between the injury and worsening of the disease of ankylosing spondylitis.

■       On cross-appeal Argonaut contends that there is no basis for the referee's increase in the permanent partial disability award by the original determination order, because claimant's disability had not changed since the time of that determination. We disagree. The record shows that the referee adequately considered claimant's physical limitations, work experience and training in making his finding, and we concur in those findings.

Affirmed.