2002 ND 115

**Janice A. PIATZ and Rebecca B. Johnson, Plaintiffs and Appellants,**

v.

**AUSTIN MUTUAL INSURANCE COMPANY, a corporation, Defendant and Appellee.**

**No. 20010082.**

Supreme Court of North Dakota.

July 11, 2002.

Leland F. Hagen (argued) of Lee Hagen Law Office, Ltd., Fargo, for plaintiffs and appellants.

R.B. McLarnan and Timothy J. McLarnan (argued) of McLarnan, Hannaher & Skatvold, P.L.L.P., Moorhead, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Janice Piatz and Rebecca Johnson appeal from the trial court's judgment dismissing their claims against Austin Mutual Insurance Company for breach of contract and bad faith. We affirm.

I

[¶ 2] On July 2, 1997, Janice Piatz and her daughter, Rebecca Johnson, were both injured in an accident when a Barnes County mower tractor made a sudden left turn in front of their pickup on a highway near Sanborn, North Dakota. Both Piatz and Johnson sustained injuries from the collision. Piatz and Johnson had insurance coverage issued by Austin Mutual Insurance Company. The policy provided standard no-fault coverage in the amount of $30,000 per person.

[¶ 3] Piatz and Johnson submitted claims for no-fault benefits with Austin Mutual. Between July 2, 1997, and May 26, 1998, Austin Mutual paid Piatz $11,629.95 and Johnson $6,749.72 for medical expenses. Austin Mutual also paid Piatz $5,055.23 and Johnson $409.75 for their wages lost during the same period. On June 30, 1998, Austin Mutual sent a letter to Piatz and Johnson terminating their benefits. This letter was based on the opinion of Dr. Robert Fielden, who, after conducting an individual medical examination, determined Piatz did not require any treatment beyond six to eight weeks following the accident, and Johnson did not require any further treatment beyond four to six weeks following the accident.

[¶ 4] Piatz and Johnson sued Austin Mutual claiming breach of contract and bad faith. On the morning of the trial, the trial court informed the parties it was bifurcating the claim for breach of contract from the claim for bad faith. Plaintiffs then waived the jury on the breach of contract claim, and that claim was tried to the court on December 11 through 13, 2000. On February 5, 2001, the trial court issued its findings of fact, conclusions of law, and order for judgment, concluding neither Piatz nor Johnson were entitled to benefits for expenses incurred after May 26, 1998. A judgment of dismissal of their claims was entered March 19, 2001. Piatz and Johnson appeal.

II

[¶ 5] Piatz and Johnson argue the trial court abused its discretion when, on its

own motion, it bifurcated trial of the breach of contract and bad faith claims. Piatz and Johnson claim the trial court's order did not further the convenience of the parties because all the exhibits and testimony would have to be submitted anew in the second trial. They contend the decision did not advance fairness, justice, or judicial economy, and it caused considerable inconvenience and expense.

[¶ 6] A trial court's ruling on bifurcation of trials under N.D.R.Civ.P. 42(b) will not be overturned on appeal unless the complaining party demonstrates the court abused its discretion. *See Praus v. Mack*, 2001 ND 80, ¶ 8, 626 N.W.2d 239 (affirming a denial of a motion to sever trial of an indemnity claim from trial of a negligence action). A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.* at ¶ 6. An abuse of discretion by the trial court is never assumed, the party seeking relief has the burden to affirmatively establish it. *Gepner v. Fujicolor Processing, Inc.*, 2001 ND 207, ¶ 13, 637 N.W.2d 681.

[¶ 7] A touchstone for an effective appeal on any proper issue is that the matter was appropriately raised in the trial court so the trial court could effectively rule on it. *State v. Freed*, 1999 ND 185, ¶ 13, 599 N.W.2d 858. To take advantage of irregularities during trial, a party must object at the time they occur, so that the trial court may take appropriate action if possible to remedy any prejudice that may have resulted. *Anderson v. Otis Elevator Co.*, 453 N.W.2d 798, 801 (N.D.1990). A party's failure to object to an irregularity at trial acts as a waiver. *Sabot v. Fargo Women's Health Org.*, 500 N.W.2d 889, 894 (N.D.1993).

[¶ 8] We have not had the opportunity prior to this case to address a *sua sponte* order of bifurcation. Because N.D.R.Civ.P. 42(b) is virtually identical to the similar federal rule from which it was derived, this Court will look to relevant federal caselaw construing the federal rule for guidance in construing our own rule. *Kiker v. Walters*, 482 N.W.2d 626, 628, n. 2 (N.D.1992). In *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422 (5th Cir.1990), the appellants argued the trial court erred in bifurcating the trial issues on the morning of the trial. The court stated that appellants' failure to object precludes appellate review unless the issue presents a pure question of law and to ignore it would result in a miscarriage of justice. *Id.* at 424. The court declined to review the propriety of the trial court's decision to bifurcate the trial absent an objection on the record because the separation of issues is an obvious use of Rule 42(b). *Id.* (citing 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2390 (1971)).

[¶ 9] In the present action, Piatz and Johnson admit in their brief they failed to object to the trial court's decision to bifurcate the issues of breach of contract and bad faith. Piatz and Johnson argue their failure to object does not amount to a waiver. They claim that under N.D.R.Civ.P. 46, an objection was unnecessary because they were not given an opportunity to object.

[¶ 10] The relevant portion of N.D.R.Civ.P. 46 provides, "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party." The transcript provided by Piatz and Johnson does not include the trial court's ruling on bifurcation. Without a transcript of the trial court's ruling, we are unable to determine that the trial court did not allow Piatz and Johnson an

opportunity to raise a proper objection. Unless the record affirmatively shows the occurrence of the matters which the appellant relies upon for relief, the appellant may not urge those matters on appeal. *City of Grand Forks v. Dohman*, 552 N.W.2d 66, 68 (N.D.1996) (citing *State v. Raywalt*, 436 N.W.2d 234, 239 (N.D.1989)). We have stated that when the record on appeal does not allow for a meaningful and intelligent review of the alleged error, we will decline to review the issue. *Bell v. Bell*, 540 N.W.2d 602, 604 (N.D.1995). Having failed to object to the trial court's decision, and having failed to present this Court with a proper record for review, we conclude Piatz and Johnson have not met their burden of proving the trial court abused its discretion in bifurcating the trial.

### III

■ [¶ 11] Piatz and Johnson claim Austin Mutual's initial payments for medical expenses were made when it had access to both Piatz and Johnson's medical records. Therefore, they argue Austin Mutual waived its defense that continued claims for benefits were not reasonable or necessary because Austin Mutual had made prior payments. We disagree.

■ [¶ 12] Piatz and Johnson's argument is contrary to the public policy behind North Dakota's no-fault statute, N.D.C.C. ch. 26.1–41. No-fault insurance was designed to encourage quick, informal payments to assure injured plaintiffs are compensated for their injuries. *See* John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 5162, at 441 (2002); *see also Aponte–Correa v. Allstate Ins. Co.*, 162 N.J. 318, 744 A.2d 175, 178 (2000). "One of the primary purposes of the no-fault insurance law is to avoid protracted litigation over issues of fault or causation." *Weber v. State Farm Mut.*

*Auto. Ins. Co.*, 284 N.W.2d 299, 301 (N.D. 1979). The intent was to secure rapid payment of claims by eliminating the fault controversy and wasteful litigation, similar to the objectives of workers' compensation statutes. Appleman, *supra*, § 5162, at 441.

[¶ 13] Similar arguments have been raised in the workers' compensation arena. *See e.g. Childs v. Copper Valley Electric Ass'n*, 860 P.2d 1184, 1190 (Alaska 1993); *Townsend v. Argonaut Ins. Co.*, 60 Or. App. 32, 652 P.2d 828, 830 (1982). In *Townsend*, the plaintiff injured his back at work and started receiving medical benefits. 652 P.2d at 829. Five years after the initial injury, the plaintiff was diagnosed with ankylosing spondylitis, a form of arthritis of the spine. *Id.* Argonaut Insurance agreed to continue paying medical expenses and benefits until the dispute over the cause of injury was resolved. *Id.* at 830. The plaintiff argued on appeal that Argonaut waived its right to deny compensability of his back disease because it continued paying medical benefits after the disease was diagnosed. *Id.* The court rejected the plaintiff's argument, holding the plaintiff's position would subvert the purpose of the workers' compensation system by encouraging the insurance company to withhold benefits. *Id.* at 831.

[¶ 14] In *Childs*, the plaintiff argued that because the employer had paid initial medical bills, the employer was estopped from denying any further liability. 860 P.2d at 1190. The court found the trial judge was correct in rejecting this argument on public policy grounds. *Id.* The trial judge concluded that to hold otherwise "would encourage every employer to dispute an employee's claim to the fullest extent possible, since any payment of benefits might be seen as a concession of liability." *Id.*

[¶ 15] We find the rationale in these cases supports our rejection of the plaintiffs' argument in the present case. Austin Mutual paid no-fault benefits for claims submitted by Piatz and Johnson. After a period of time, questions were raised about reasonableness and necessity of continued treatment. Austin Mutual conducted an independent medical examination and determined no further benefits were necessary. To hold that Austin Mutual waived its defense regarding the necessity of continued medical care by initially paying no-fault benefits would encourage insurance carriers to examine and litigate every claim before any benefits were paid. This is contrary to the rationale and public policy of the no-fault statutes.

### IV

[¶ 16] Piatz and Johnson argue the trial court erred in excluding evidence of Dr. Fielden's prior independent medical examinations. Piatz and Johnson offered Dr. Fielden's answers to interrogatories from a prior case to indicate he performed an average of approximately 1,200 individual medical examinations and earned over $500,000 per year. The trial court refused to take judicial notice of this document, ruling there had not been sufficient foundation established.

[¶ 17] A trial court's decision to exclude evidence because of inadequate foundation lies within the sound discretion of the trial court and will not be disturbed on appeal unless there was an abuse of discretion that affected substantial rights of the parties. *Swiontek v. Ryder Truck Rental, Inc.*, 432 N.W.2d 893, 896 (N.D. 1988). We review a trial court's exclusion of evidence on foundational grounds as follows:

> Whether or not an exhibit should have been excluded on the basis that it lacked adequate foundation is primarily within

the sound discretion of the trial court, the exercise of which will not be disturbed on appeal in the absence of a showing that it affected the substantial rights of the parties.

*Id.* (citing *Ned Nastrom Motors, Inc. v. Nastrom–Peterson–Neubauer Co.*, 338 N.W.2d 64, 66 (N.D.1983)).

[¶ 18] Piatz and Johnson attempted to introduce evidence concerning Dr. Fielden's prior individual medical examinations through Austin Mutual's previous attorney who handled their claim. The trial court excluded the document and refused to take judicial notice because Piatz and Johnson had not established a connection between Dr. Fielden's answers to interrogatories and the testifying witness. We do not find this to be an abuse of discretion.

[¶ 19] Further, any harm caused to Piatz and Johnson was nullified by the inclusion of the evidence in Dr. Fielden's deposition. Dr. Fielden did not testify at trial, but his deposition was received by the trial court. At his deposition, Piatz and Johnson were able to cross-examine him with the information they tried to introduce at trial. The trial court was made aware of the number of individual medical examinations performed by Dr. Fielden and the amount of income he received.

### V

[¶ 20] Piatz and Johnson argue Dr. Fielden was not qualified to express an opinion about whether chiropractic treatment was necessary. They claim Dr. Fielden acknowledged he had no training in the field of chiropractic treatment, yet the trial court gave full weight to his opinions.

[¶ 21] Whether a witness is qualified as an expert is within the sound discretion of the trial court, and will not be

reversed on appeal unless that discretion is abused. *Myer v. Rygg*, 2001 ND 123, ¶ 8, 630 N.W.2d 62. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process. *Botnen v. Lukens*, 1998 ND 224, ¶ 12, 587 N.W.2d 141. We are reluctant on appeal to interfere with the broad discretion given to the trial courts to determine the qualifications and usefulness of expert witnesses. *Myer*, 630 N.W.2d 62, 2001 ND 123, at ¶ 8.

[¶ 22] Dr. Fielden was asked to explain the conclusions he reached concerning the physical condition of Piatz and Johnson. Johnson and Piatz objected because Dr. Fielden was not a chiropractor and should not be allowed to comment about the necessity of any chiropractic treatment. We have explained that a witness need not be licensed in a given field to be an expert, so long as the witness possesses the requisite knowledge, skill, experience, training, or education in that field. *See Oberlander v. Oberlander*, 460 N.W.2d 400, 402 (N.D. 1990); *see also Myer*, 630 N.W.2d 62, 2001 ND 123, at ¶ 14; *Kluck v. Kluck*, 1997 ND 41, ¶ 9, 561 N.W.2d 263; *State v. Carlson*, 1997 ND 7, ¶ 26, 559 N.W.2d 802; *Anderson v. A.P.I. Co.*, 1997 ND 6, ¶ 9, 559 N.W.2d 204. The record reflects that Dr. Fielden graduated from medical school in 1957 and went on to receive specialized training in orthopedic surgery, taught orthopedic surgery at the University of Toronto and the University of Minnesota, and continued to perform orthopedic surgeries until 1994. Dr. Fielden testified as to his opinion regarding the condition of Piatz and Johnson based on his individual evaluation and his years of experience as an orthopedic specialist. We conclude the trial court did not abuse its discretion in allowing Dr. Fielden to testify concerning the medical conditions of Piatz and Johnson.

## VI

[¶ 23] Piatz and Johnson argue the trial court's findings of fact are clearly erroneous. They challenge the following findings of fact: the small hot tub provided by Austin Mutual was sufficient to comply with Austin Mutual's contractual obligation; a special mattress was not a reasonable or necessary medical rehabilitation expense for Johnson; a conversion seat was not a reasonable or necessary medical rehabilitation expense for Johnson; a treadmill was not a reasonable or necessary medical rehabilitation expense for Johnson; Piatz failed to disclose to her treating physicians her extensive medical history involving pain and treatment to the same areas of her body she claims were injured in the accident on July 2, 1997; no reliable medical opinions were submitted on behalf of Piatz connecting her claim for damages to the accident; and prior to May 26, 1998, Piatz and Johnson had recovered from any and all injuries she sustained in the accident of July 2, 1997.

[¶ 24] We review the trial court's findings of fact under the clearly erroneous standard set forth in N.D.R.Civ.P. 52(a). *Auction Effertz, Ltd. v. Schecher*, 2000 ND 109, ¶ 10, 611 N.W.2d 173. A trial court's findings of fact on appeal are presumed to be correct, and the complaining party bears the burden of demonstrating a finding is clearly erroneous. *State ex rel. Heitkamp v. Family Life Servs.*, 2000 ND 166, ¶ 19, 616 N.W.2d 826. A trial court's findings of fact are not clearly erroneous under if they have support in the evidence, and we are not left with a definite and firm conviction a mistake has been made. *Id.* In *Estate of Howser*, 2002 ND 33, ¶ 10, 639 N.W.2d 485 (quoting *Moen v. Thomas*, 2001 ND 95, ¶ 19–20, 627 N.W.2d 146), we explained:

In a bench trial, the trial court is "the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations." We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony. We give due regard to the trial court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible views of the evidence is not clearly erroneous.

[¶ 25] In its findings of fact, the trial court gave significant weight to Dr. Fielden's conclusion that Piatz and Johnson had fully recovered from any injuries sustained in the accident on July 2, 1997. The trial court found no reliable medical opinions were submitted on behalf of Piatz because Piatz had failed to disclose to her doctors her prior medical history regarding pain and treatment to the areas injured in the accident on July 2, 1997. The trial court also noted Johnson had engaged in full and rigorous exercise and physical activity since the accident, including participating in track by throwing the discus and shot-put, lifting weights, running, doing gymnastics, playing basketball, and snowmobiling. These facts, combined with Dr. Fielden's conclusions, support the trial court's findings that a larger hot tub, a special mattress, a conversion seat, and a treadmill were not reasonable and necessary medical or rehabilitation expenses. After reviewing the evidence in this case, we are not left with a definite and firm conviction that a mistake has been made. We conclude the trial court's findings of fact are not clearly erroneous.

## VII

[¶ 26] The judgment of dismissal is affirmed.

[¶ 27] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

MARY MUEHLEN MARING, J.: I concur in the result.