2003 ND 169

**Steven D. AKERLIND, individually and on behalf of Busy Bubbles Laundry, a General Partnership, Plaintiff and Appellant**

v.

**Steven L. BUCK and Michelle Marie Buck, Defendants and Appellees.**

**No. 20030139.**

Supreme Court of North Dakota.

Nov. 13, 2003.

Joseph A. Turman, DeMars & Turman, Fargo, for plaintiff and appellant.

Jonathan P. Sanstead, Pearce & Durick, Bismarck, for defendants and appellees.

KAPSNER, Justice.

[¶1] Steven D. Akerlind appealed from an amended judgment in his action against Steven L. Buck and Michelle Marie Buck for dissolution and an accounting of their Busy Bubbles Laundry business partnership in Fargo. We conclude the district court's findings on the accounting and distribution of partnership assets and debts is not clearly erroneous, and we affirm.

I

[¶2] In January 1996, Akerlind acquired a laundromat business in Fargo and operated it as a sole proprietorship. Akerlind was an experienced businessman, having owned and operated laundromats and other businesses since 1971. Akerlind eventually decided to get out of the laundry business and met Steven Buck, a nephew of an acquaintance, and told him he wanted a partner to run the laundry. Steven Buck and his wife, Michelle Buck, had no business experience, but on May 18, 1998, the Bucks and Akerlind began a general partnership operating Busy Bubbles Laundry.

[¶3] The partnership started with no capital, and Busy Bubbles entered into an agreement with Akerlind to lease the laundromat building and equipment for $4,500 per month. Busy Bubbles agreed to assume an obligation for $91,000 outstanding on a loan Akerlind had obtained for the purchase of equipment for the laundromat. During the course of the partnership, Busy Bubbles also purchased, with partnership funds, a building in West Fargo for storage purposes.

[¶4] Akerlind and Michelle Buck were the only partners actively involved in the business. Akerlind handled all of the finances for the business and maintained the equipment. Michelle Buck worked full time at the business and her duties included running the commercial laundry, soliciting customers, filling change and vending machines, cleaning, making deliveries, preparing the payroll, and supervising employees. The parties' written partnership agreement, eventually entered into on June 2, 1999, provided the "Partnership shall maintain a bank account or bank accounts in the Partnership's name in a national or state bank," and "[c]hecks and drafts shall be drawn on the Partnership's bank account for Partnership purposes only." It is undisputed that Akerlind commingled partnership revenue with his personal funds in the partnership bank account.

[¶5] The partnership came to an end on April 24, 2001, when Akerlind changed the locks on all of the vending machines, change machines, and washers and dryers at the business. Akerlind claimed he did so because he began noticing cash shortages at the business. Akerlind sued the Bucks for dissolution of the partnership and an accounting, claiming Michelle Buck had converted partnership funds to her own use in violation of her duties as a partner and in violation of the partnership agreement. The district court ruled Michelle Buck had not converted partnership funds to her own use, but that Akerlind had breached his fiduciary duty to his partners by commingling partnership funds with his own funds and paying his personal debts out of funds from the partnership checking account.

[¶6] The court ruled Akerlind was entitled to retain the laundromat equipment, but ordered the sale of the West Fargo property and items contained therein, and three partnership vehicles. The court ordered the proceeds of the sale be used to satisfy the mortgage on the West Fargo property and to pay Michelle Buck $7,200 for her work at Busy Bubbles during the last nine months of the partnership, with any remainder to be divided equally be-

tween the Bucks and Akerlind. Akerlind appealed.

## II

[¶ 7] Akerlind argues several of the district court's findings of fact are clearly erroneous. A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law. *In re K.M.G.*, 2000 ND 50, ¶ 4, 607 N.W.2d 248. A trial court's findings of fact on appeal are presumed to be correct, and the complaining party bears the burden of demonstrating a finding is clearly erroneous. *Piatz v. Austin Mut. Ins. Co.*, 2002 ND 115, ¶ 24, 646 N.W.2d 681. In *Moen v. Thomas*, 2001 ND 95, ¶ 20, 627 N.W.2d 146 (internal citations omitted), we said:

> In a bench trial, the trial court is "the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations." We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony. We give due regard to the trial court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible views of the evidence is not clearly erroneous.

[¶ 8] Much of the trial was consumed by an examination of the partnership "records" kept by Akerlind. Akerlind handled all of the finances for the partnership, did not keep a separate checking account for partnership business, and commingled partnership funds with his personal funds. When asked why he did not maintain a separate checking account for the partnership, Akerlind testified, "I just never got around to it." Akerlind explained he would once a year separate his personal financial entries from the partnership's financial entries in the checking account. His accountant's trial exhibit was based on Akerlind's recollection and direction for allocating income and expenses. During trial, Akerlind acknowledged several entries in the exhibit were incorrectly labeled.

[¶ 9] In its decision, the district court noted Akerlind was an experienced businessman and the Bucks were inexperienced business persons. The court noted the business was growing annually. Akerlind had promised the Bucks they could purchase the laundromat business after three years. Akerlind locked the Bucks out just a short period before the three years expired. The district court specifically found that the "financial records of this business which Akerlind controlled . . . are a mess"; that during the course of the partnership, "Akerlind made a number of questionable financial transactions"; and that "Akerlind was not credible on a number of the financial matters he testified about." We review Akerlind's challenged findings with these unchallenged findings of the district court in mind.

## A

[¶ 10] Akerlind contends the district court's finding that Michelle Buck did not cause a cash shortage at the business is clearly erroneous. The court found, contrary to Akerlind's assertions, that there had been "significant increases in revenue" while Michelle Buck operated the business. The Busy Bubbles Laundry records produced by Akerlind show the monthly deposits for the business increased every month over prior year deposits while Michelle Buck worked there.

[¶ 11] Akerlind argues an increase in monthly revenue does not negate the possibility of cash shortages, and complains the district court should have accepted his testimony that he believed Michelle Buck

was stealing partnership funds. Akerlind may be correct that increasing revenues do not necessarily mean there was no cash shortage. The district court specifically found Akerlind's testimony was not credible on financial matters, and concluded Akerlind did not prove Michelle Buck was converting partnership funds. Under these circumstances, an increase in overall business revenue permits an inference that there were no cash shortages caused by Michelle Buck. We conclude the trial court's finding is not clearly erroneous.

### B

[¶ 12] Akerlind contends the $4,500 per month rent the partnership was supposed to pay him for the building and equipment was never paid and the district court's finding to the contrary is clearly erroneous. The district court found:

> During the course of the partnership, Akerlind made a number of questionable financial transactions. As previously stated he paid approximately $1,000,000 of personal bills out of the Busy Bubbles checking account. He provided the information to the accountant for the preparation of the 1998 and 1999 tax returns for the partnership. These partnership returns show that the $4,500 per month rent to Akerlind was actually paid by the partnership. Akerlind now claims that no such payments were ever made. No 2001 tax return has been filed for this partnership. Akerlind never provided the Bucks with any of the actual financial data for Busy Bubbles or the tax returns. Instead, he provided them with only a Schedule K–1, which they needed for the preparation of their personal tax returns and would periodically provide them with a summary as to how the business was doing. He never told the Bucks that the business was not paying rent or any of its other obli-

gations. From all appearances the business was meeting its expenses.

[¶ 13] Michelle Buck testified that when she would question Akerlind about how the business was doing financially, he would respond that "[e]verything was fine." The district court obviously did not believe Akerlind's testimony that he did not receive rent payments, and that a $4,500 monthly payment shown on his records as coming from his personal funds was for a loan on equipment for an unrelated business. Considering the tax returns which indicate the contrary and Michelle Buck's testimony, we conclude the district court's finding is not clearly erroneous.

### C

[¶ 14] Akerlind argues the Bucks failed to present evidence to dispute the testimony and exhibits presented by his accountant, and the district court's findings that contradict his evidence are therefore unsupported by the evidence and are clearly erroneous.

[¶ 15] The credibility of witnesses, including expert witnesses, and the weight to be given their testimony, are questions for the trier of fact. *E.g., Selzler v. Selzler*, 2001 ND 138, ¶ 15, 631 N.W.2d 564. The accountant's testimony in this case related to documents he prepared setting forth the various checks written on and deposits made to the commingled partnership account. The accountant testified that Akerlind allocated each check and deposit to either the partnership or "other" categories and the accountant merely transferred that information onto the exhibit. The Bucks challenged this evidence and pointed out discrepancies in the exhibit admitted to by the accountant, including $91,000 in partnership loan proceeds incorrectly allocated to the "other" category

rather than to a partnership deposit. The district court observed:

> During the course of the trial, Akerlind and his accountant offered a schedule that initially showed approximately $1.4 [m]illion dollars of checks being written out of the Busy Bubbles checking account for Busy Bubbles expenses. Upon questioning some of the transactions, this schedule was amended to reflect payments of only approximately $1,000,000 for Busy Bubbles expenses. Also, Akerlind claims that he borrowed money on behalf of the business, but shows the deposits for these borrowings as his personal money and not as an asset of Busy Bubbles.

> . . . .

> During this period of time, the Bucks accounted for all of the partnership property and deposited the funds in the partnership checking account. Akerlind, who controlled these funds, co-mingled the funds with his own personal funds and paid nearly $1,000,000 of personal obligations out of the Busy Bubbles checking account by his own accounting.

> Akerlind deposited personal money and paid personal bills out of the Busy Bubbles account. The amount of personal bills paid exceeded personal funds deposited by nearly $250,000.

[¶ 16] We conclude the district court's findings are supported by the evidence and are not clearly erroneous.

### D

[¶ 17] Akerlind claims the district court erred in finding he failed to provide the Bucks with financial information, including the partnership tax returns.

[¶ 18] Under N.D.C.C. § 45–16–03(3), each partner must furnish to a partner:

a. Without demand, any information concerning the partnership's business and affairs reasonably required for the proper exercise of the partner's rights and duties under the partnership agreement or chapters 45–13 through 45–21; and

b. On demand, any other information concerning the partnership's business and affairs, except to the extent the demand or the information demanded is unreasonable or otherwise improper under the circumstances.

[¶ 19] The evidence established that Akerlind was responsible for handling the partnership's financial affairs. Akerlind admitted that he kept books for the partnership only during 1998 and 1999. Michelle Buck testified they received monthly statements from Akerlind until June 1999 showing $4,500 rent as part of the partnership expenses. Michelle Buck testified they requested a copy of the partnership's 1998 tax return, but Akerlind told them that the schedule K–1 document they received for their personal income taxes was sufficient. Akerlind's claim that the Bucks always had access to the books because they knew where they were kept is unconvincing when Akerlind was in charge of partnership finances and failed to keep any discernable records during the final two years of the partnership's existence. We conclude the district court's finding is not clearly erroneous.

### E

[¶ 20] Akerlind also challenges the district court's award of $7,200 compensation to Michelle Buck for her final nine months of work at Busy Bubbles. The district court found:

> Michelle Buck never received a salary for her work at Busy Bubbles. Periodically, she and Mr. Akerlind would empty the coins out of the machines at the

business and Akerlind would provide her with some cash for her work at the business. These amounts were minimal, and Michelle Buck received no payment at all for the last nine months she worked at Busy Bubbles.

The court awarded her $7,200 "as the fair value of the pay she should have received during the last nine months of the operation of the partnership."

[¶ 21] Generally, a "partner is not entitled to remuneration for services performed for the partnership." N.D.C.C. § 45–16–01(8). Subject to exceptions not relevant here, however, "relations among the partners and between the partners and the partnership are governed by the partnership agreement." N.D.C.C. § 45–13–03(1). A "partnership agreement thus controls whether or not the partners are entitled to compensation for services provided to the partnership." *First Nat'l Bank of Belfield v. Candee*, 488 N.W.2d 391, 397 (N.D.1992). *See also Matter of Estate of Thomas*, 532 N.W.2d 676, 682 (N.D.1995). The partnership agreement in this case provided the "Managing Partners may pay compensation to any Partner, as they deem reasonable."

[¶ 22] Akerlind and Michelle Buck constituted a majority of the managing partners. Akerlind acknowledged there was an informal agreement that Michelle Buck be paid for her work at Busy Bubbles. Akerlind testified:

Q Now, had Michelle Buck been paid during that period of time?

A I wouldn't know. She was supposed to take whatever money she felt she was owed or worked during that time.

Q Did you ever tell her she couldn't take any?

A No.

Q Was there an accounting between the two of you as to—or between the two partners as to any money taken or removed?

A No.

Q Not at any time?

A No.

Q So how would—how would one party know what the other party was doing?

A I didn't.

Q You never discussed it with them?

A She would tell me that she thought she should get more per week or—I really—I said several times that if you take out a lot of cash, you know, it ends—ends up costing you in the end.

Q What did you mean by that?

A The amount of cash flow.

[¶ 23] Michelle Buck also testified there was an agreement that she be compensated:

THE COURT: So what—what were you being paid, ma'am? Were you paid by the hour or the month?

THE WITNESS: It started off, we were paid by the hour in the very beginning. We were in the process of trying to find partners to be partners with all or both parties. That was unsuccessful. Then eventually it just went to—we were paid 200 every so often—every week or every other week. Depended on the cash flow. What I was paid, Steve Akerlind was paid. It went—switched off and on. He took half of what I took. Eventually, there was nothing for me to take, so I was getting paid nothing.

[¶ 24] Although this method of conducting a business partnership may be unsound, it was the method chosen by these partners. We believe the district court could find from this evidence there was an informal

agreement that Michelle Buck be paid $200 "every week or every other week." Because Busy Bubbles revenues continued to significantly increase, the court could further find that Michelle Buck was entitled to $200 per week during the last nine months of the partnership. There are at least four weeks in every month, resulting in a total of $800 per month compensation. We conclude the district court's award of $7,200 for Michelle Buck's final nine months of work is within the realm of the evidence presented and is not clearly erroneous.

### F

[¶ 25] Akerlind argues the district court erred in finding he breached a fiduciary duty by commingling partnership funds with his own funds and by paying his personal debts out of the partnership checking account.

[¶ 26] A partner has a fiduciary duty of loyalty to the partnership and other partners to "account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property." N.D.C.C. § 45–16–04(2)(a). This Court has held that a partner breaches a fiduciary duty if the partner fails to keep fiduciary property separate and distinct and uses partnership property for the partner's personal benefit. *See Engstrom v. Larson,* 77 N.D. 541, 563, 44 N.W.2d 97, 109 (1950). *See also Welder v. Green,* 985 S.W.2d 170, 175 (Tex.App.1998). Whether a person has breached a fiduciary duty is a finding of fact. *Matter of Estate of Rohrich,* 496 N.W.2d 566, 569 (N.D.1993).

[¶ 27] Akerlind acknowledged commingling partnership funds with his funds and the district court did not accept Akerlind's testimony or attempts to show through his records that he did not use partnership funds for his own personal benefit. We conclude the district court's finding that Akerlind breached a fiduciary duty is not clearly erroneous.

### G

[¶ 28] Akerlind contends the district court disregarded evidence that he loaned money to the partnership and claims he is entitled to be reimbursed for the loans.

[¶ 29] Akerlind testified he made loans to the partnership. However, he was unable to testify when the loans were made or point to deposit allocations to the partnership in his records representing those loans. We conclude the district court did not err in refusing to reimburse Akerlind for his alleged loans to the partnership.

### III

[¶ 30] The amended judgment is affirmed.

[¶ 31] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN and DALE V. SANDSTROM, JJ., concur.