Filed 5/17/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 104

In the Matter of the Estate 

of Emma Boehm, Deceased

Donna M. Kraft, Personal 

Representative of the Estate 

of Emma Boehm, Petitioner and Appellant

v.

Alicia Rae Ramos, Interested Party and Appellee

No. 20110212

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Gail H. Hagerty, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Garrett D. Ludwig (argued) and Arlen M. Ruff (on brief), P.O. Box 1266, Mandan, N.D. 58554-7266, for petitioner and appellant.

David J. Smith (argued) and Sheldon A. Smith (on brief), P.O. Box 460, Bismarck, N.D. 58502-0460, for interested party and appellee.

Estate of Boehm

No. 20110212

Maring, Justice.

[¶1] Donna M. Kraft, the personal representative for the estate of Emma Boehm, appeals from the trial court’s order recognizing Alicia Rae Ramos as a devisee under the estate of Emma Boehm.  We hold Ramos is a proper devisee under Emma Boehm’s will and affirm the trial court’s May 17, 2011, order and its February 17, 2012, opinion on the motion to reconsider in which it concluded William Boehm functioned as a parent to Ramos.

I

[¶2] Alicia Rae Ramos was born to Kelly McCormick and William Boehm on August 15, 1979.  McCormick and William Boehm lived together with Ramos for approximately one year.  They did not marry, and their relationship eventually deteriorated to the point it ended.  In July 1983, McCormick married Bernard Schumacher.  In November 1983, Schumacher adopted Ramos, and William Boehm’s parental rights were terminated.  After the termination of his parental rights, William Boehm ceased seeing or spending time with Ramos.  When Ramos was fifteen, she and William Boehm were reintroduced and, through shared meals and time spent on his family’s farm, became reacquainted with one another.  When Ramos graduated from high school, William Boehm attended the ceremony.

[¶3] In February 1995, Emma Boehm, William Boehm’s mother, executed a Last Will and Testament.  In her will, Emma Boehm divided the residuary of her estate into seven shares, one for each of her six living children and one for the children of a deceased son.  Emma Boehm also included a clause explaining how the share of a child, alive when the will was executed, should be disposed of if the child predeceased her after the will’s execution.  The clause stated:

If any of my other children shall predecease me and leave issue surviving me, such surviving issue shall take by right of representation that share herein given such deceased child of mine.  Should any of my children predecease me and leave no issue surviving me, then it is my will that the share of that deceased child shall pass and be divided among my surviving children, or their surviving issue by right of representation, as the case may be.

Emma Boehm died in 2010 but was predeceased by William Boehm who died in 2000.  Following Emma Boehm’s death, her Last Will and Testament was admitted to informal probate, and Ramos moved for determination of her status with respect to Emma Boehm’s will.

[¶4] After a hearing on the motion, the trial court held Ramos was a devisee under Emma Boehm’s estate.  Kraft, as the personal representative of Emma Boehm’s estate, appealed.  Following oral argument, we remanded the case to the trial court for its decision of all remaining issues related to Ramos’s status with respect to Emma Boehm’s will.  On remand, the trial court, in its February 17, 2012 decision, concluded William Boehm functioned as a parent to Ramos before her eighteenth birthday and that if the will is construed to provide for a class gift, Ramos is a member of the class.

II

[¶5] When construing a will, a court’s primary focus “is to ascertain the testator’s intent as it appears from a complete consideration of the will given the surrounding circumstances.”  
Zimbelman v. Loh
, 539 N.W.2d 67, 71 (N.D. 1995).  It is the testator’s intent, as expressed in the will, that controls the testator’s dispositions.  
Estate of Flynn
, 2000 ND 24, ¶ 7, 606 N.W.2d 104.  If the language in the will is “clear and unambiguous, the testator’s intent must be determined from the language of the will itself.”  
Id.
  Whether a will is ambiguous “is a question of law for this court to decide.”  
Zimbelman
, 539 N.W.2d at 71.  A will is ambiguous if a provision is susceptible to more than one reasonable interpretation.  
Estate of Brown
, 1997 ND 11, ¶ 15, 559 N.W.2d 818.  However, “‘[w]e decide for ourselves the construction of an unambiguous will.’”  
Estate of Camas
, 2012 ND 45, ¶ 4 (quoting 
Zimbleman
, 539 N.W.2d at 70).

III

[¶6] Neither of the parties allege Emma Boehm’s will is ambiguous, but both argue it should be construed in their favor.  Emma Boehm died leaving a valid will.  Kraft argues the trial court erred as a matter of law by relying on laws governing intestate succession to interpret Emma Boehm’s will.  More specifically, Kraft argues the court erred when it concluded Ramos was included in “issue” under Emma Boehm’s will and held Ramos was a devisee entitled to take from Emma Boehm’s estate.  Ramos argues the trial court correctly construed Emma Boehm’s will.

[¶7] Emma Boehm’s will provides:  “If any of my other children shall predecease me and leave issue surviving me, such surviving issue shall take by right of representation that share herein given such deceased child of mine.”  The term “issue” is not defined in the will; however, it is defined in the North Dakota Uniform Probate Code.  
See
 N.D.C.C. ch. 30.1-01.  When technical language is used, such as words that have “acquired a peculiar and appropriate meaning in law, or . . . are defined by statute,” such words “must be construed according to such peculiar and appropriate meaning or definition.”  N.D.C.C. § 1-02-03; 
see
 
Estate of Brown
, 1997 ND 11, ¶ 17, 559 N.W.2d 818.

[¶8] “‘Issue’ of a person means all his lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this title.”  N.D.C.C. § 30.1-01-06(22) (Supp. 1995).
(footnote: 1)  The definition of “issue” incorporates the term “child,” and therefore the definition of “child” must be examined as well.  “‘Child’ includes any individual entitled to take as a child under [title 30.1] by intestate succession from the parent whose relationship is involved and excludes any person who is only a stepchild, a foster child, a grandchild, or any more remote descendant.”  N.D.C.C. § 30.1-01-

06(4) (Supp. 1995).  To fully understand the definition of “child,” we must determine under what conditions a person is “entitled to take as a child under this title by intestate succession from the parent whose relationship is involved . . . .”  
Id.
  Section 30.1-04-09, N.D.C.C. (Supp. 1995), is particularly relevant to this determination, providing:

If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:

1. An adopted person is the child of an adopting parent and not of the natural parents, except that adoption of a child by the spouse of a natural parent has no effect on the relationship between the child and either natural parent.

[¶9] In this case, reliance on the intestacy statutes is appropriate. “Issue” incorporates the definition of “child,” which refers to the intestacy statutes to determine the conditions under which a child may inherit from a parent.  According to the exception under N.D.C.C. § 30.1-04-09(1) (Supp. 1995), “adoption of a child by the spouse of a natural parent has no effect on the relationship between the child and either natural parent.”  Ramos’s situation falls within this exception.  Ramos’s mother, Kelly McCormick, married Bernard Schumacher in July 1983.  Schumacher adopted Ramos in November 1983.  Because Schumacher was McCormick’s spouse when he adopted Ramos, the adoption had no effect on the relationship between Ramos and her natural father, William Boehm.  Ramos is entitled to take as a child under North Dakota’s intestate succession laws.  Thus, she falls within the definition of “child” incorporated within the definition of “issue.”  As William Boehm’s issue, Ramos is a proper devisee of Emma Boehm’s will.

[¶10] Kraft further argues N.D.C.C. § 14-15-14 (1991) controls whether Ramos is eligible to inherit through William Boehm, rather than N.D.C.C. § 30.1-04-09(1) (Supp. 1995).  Section 14-15-14 is part of North Dakota’s Revised Uniform Adoption Act and addresses the effects of a decree of adoption.  According to N.D.C.C. § 14-

15-14(1)(a) (1991), a final decree of adoption operates as follows:

[T]o relieve the natural parents of the adopted individual of all parental rights and responsibilities, and to terminate all legal relationships between the adopted individual and his relatives, including his natural parents, so that the adopted individual thereafter is a stranger to his former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the individual by name or by some designation not based on a parent and child or blood relationship.

Kraft claims Ramos is precluded from inheriting through William Boehm, because Emma Boehm’s will does not mention Ramos by name or some designation not based on a parent and child relationship.

[¶11] North Dakota’s statutory rules of construction provide:  “If the provisions of any chapter or title conflict with or contravene the provisions of any other chapter or title, the provisions of each chapter or title must prevail as to all matters in question arising thereunder out of the same subject matter.”  N.D.C.C. § 1-02-27.  The primary focus of this case involves determining whether an individual is a proper devisee of a will.  Section 30.1-04-09(1), N.D.C.C. (Supp. 1995), which states: “An adopted person is the child of an adopting parent and not of the natural parents, except that adoption of a child by the spouse of a natural parent has no effect on the relationship between the child and either natural parent,” creates an exception to the general adoption statutory provision that an adopted individual is a stranger to his natural parents for the purposes of inheritance.  Determining the proper devisees of an individual’s will is governed by the Uniform Probate Code; therefore, it is appropriate to apply the Uniform Probate Code rather than the Revised Uniform Adoption Act.

IV

[¶12] Kraft argues the residuary bequest should be treated as a class gift, rather than as a gift to individuals.  If the residuary bequest constitutes a class gift, Kraft contends Ramos is prohibited from inheriting under the will, because William Boehm did not act as her father before she turned eighteen.

[¶13] Section 30.1-09.1-05(2), N.D.C.C., includes adopted individuals in class gifts in the same manner they are included in intestate succession.  However, subsection (3) states “[i]n construing a dispositive provision of a transferor who is not the genetic parent, a child of a genetic parent is not considered the child of that parent unless the parent . . . functioned as a parent of the child before the child reached eighteen years of age.”  N.D.C.C. § 30.1-09.1-05(3).  The Editorial Board Comment on § 30.1-09.1-

05 offers a more straight-forward explanation.  The rationale behind subsection (3) is based on the idea that “a transferor who is not the genetic parent of a child would want the child to be included in a class gift as a child of the genetic parent only if the genetic parent . . . functioned as a parent of the child” before the child’s eighteenth birthday.  N.D.C.C. § 30.1-09.1-05, Editorial Board Comment.  The Editorial Board Comment continues and gives an example.

G’s will created a trust, income to G’s son, A, for life, remainder in corpus to A’s descendants who survive A, by representation.  A fathered a child, X; A and X’s mother, D, never married each other, and A never functioned as a parent of the child, nor did any of A’s relatives or spouses or surviving spouses of any of A’s relatives.  D later married E; D and E raised X as a member of their household.  Because neither A nor any of A’s specified relatives ever functioned as a parent of X, X would not be included as a member of the class of A’s descendants who take the corpus of G’s trust on A’s death.

N.D.C.C. § 30.1-09.1-05, Editorial Board Comment.  “Function as a parent of a child” is defined under the Uniform Probation Code:

“Functioned as a parent of the child” means behaving toward the child in a manner consistent with being the child’s parent and performing functions that are customarily performed by a parent, such as fulfilling parental responsibilities toward the child, recognizing or holding out the child as the individual’s child, materially participating in the child’s upbringing, and residing with the child in the same household as regular members of that household.

N.D.C.C. § 30.1-04-14(4); 
see
 N.D.C.C. § 30.1-09.1-05(1)(e).

[¶14] We review a trial court’s challenged “findings of fact under the clearly erroneous standard set forth in N.D.R.Civ.P. 52(a).”  
Piatz v. Austin Mut. Ins. Co.
, 2002 ND 115, ¶ 24, 646 N.W.2d 681.  Under N.D.R.Civ.P. 52(a)(1), a trial court “must find the facts specially.”  Further, a trial court’s findings of fact “must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court’s opportunity to judge the witnesses’ credibility.”  N.D.R.Civ.P. 52(a)(6).  “A trial court’s findings of fact on appeal are presumed to be correct, and the complaining party bears the burden of demonstrating a finding is clearly erroneous.”  
Piatz
, 2002 ND 115, ¶ 24, 646 N.W.2d 681.  This Court has stated “[a] finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction a mistake has been made.”  
Wild Rice River Estates, Inc. v. City of Fargo
, 2005 ND 193, ¶ 10, 705 N.W.2d 850.  A finding of fact is not clearly erroneous “merely because the appeals court might have reached a different result.”  
Anderson v. Mooney
, 279 N.W.2d 423, 426 (N.D. 1979).

[¶15] Kraft argues the record does not support the trial court’s finding that William Boehm functioned as a parent to Ramos.  According to Kraft, evidence in the record shows William Boehm did not fulfill his parental responsibilities; he did not hold Ramos out as his daughter; he did not materially participate in Ramos’s upbringing; and he and Ramos were never members of the same household but merely shared a residence.  Kraft largely bases these assertions on William Boehm’s lack of interaction with Ramos between her third and fifteenth birthdays.

[¶16] The trial court found William Boehm functioned as a parent to Ramos.  The court based this finding on several facts:  William Boehm lived with Ramos while she was an infant; he continued to visit Ramos after he was no longer living with Ramos and her mother; he and Ramos reestablished their relationship when Ramos was fifteen years old; and he attended Ramos’s high school graduation ceremony.  There is evidence in the record to support the trial court’s finding that William Boehm functioned as Ramos’s parent.  We, therefore, do not need to reach the issue of whether the residuary bequest in Emma Boehm’s will constitutes a class gift.

[¶17] We conclude Ramos is a proper devisee under Emma Boehm’s will and affirm the trial court’s March 2, 2012, decision in which it concluded William Boehm functioned as a parent to Ramos.

[¶18] We affirm the order of the trial court dated May 17, 2011, and the trial court’s opinion on the motion to reconsider dated February 17, 2012.

[¶19] Mary Muehlen Maring

Daniel J. Crothers

Carol Ronning Kapsner

H. Patrick Weir, D.J.

Gerald W. VandeWalle, C.J.

[¶20] The Honorable H. Patrick Weir, D.J., sitting in place of Sandstrom, J., disqualified.

FOOTNOTES
1:    
We apply the version of the North Dakota Century Code in effect in 1995 at the time Emma Boehm executed her will, which was relied on similarly by the parties and trial court.  
See
 80 Am. Jur. 2d 
Wills
 § 1219 (Supp. 2002) (explaining that generally “the provisions in a will are presumed to be made with an understanding of, and intent to act pursuant to, law and public policy as it exists when the will is executed”).